# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 23-0636V**

|  |  |
|---|---|
| SANGEETHA GNANASUNDARAM,<br><br>               Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br><br>Filed: June 10, 2026 |

*Bridget Candace McCullough, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Mary Novakovic, U.S. Department of Justice, Washington, DC, for Respondent.*

### RULING ON ENTITLEMENT[1]

On May 3, 2023, Sangeetha Gnanasundaram filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of a human papillomavirus ("HPV") vaccine she received to her left shoulder on February 11, 2022. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

Because the parties could not informally resolve the issue of entitlement, they were ordered to file briefs setting forth their respective arguments, and were notified that I would

---

[1] Because this Ruling/Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling/Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

address their dispute at an expedited hearing, which ultimately took place on May 11, 2026. For the reasons set forth below, I find that Petitioner is entitled to compensation.

## I. Procedural History

On February 8, 2024, Respondent filed his Rule 4(c) Report (ECF No. 18) contesting Petitioner's ability to establish a Table claim. Respondent's Report at 5-6. Respondent argued that Petitioner could not prove that the onset of her shoulder pain occurred within 48-hours of vaccination, and that Petitioner's medical records do not preponderantly demonstrate a reduced range of motion as required by the SIRVA QAI. *Id*. On May 30, 2024, I issued an order stating that I was likely to find in favor of Petitioner on entitlement as the record stood, but I encouraged the parties to informally resolve the case. ECF No. 19.

The parties attempted over the next year to settle the matter but were unsuccessful. On August 9, 2024, I issued a scheduling order instructing Petitioner to brief entitlement. Petitioner then filed a Motion for Ruling on the Record ("Mot.") on November 7, 2024. ECF No. 25. Respondent filed a Response on December 9, 2024 "(Resp.")". Petitioner filed a Reply on January 15, 2025 ("Reply").

After hearing arguments in this matter and providing the parties with my preliminary views, I encouraged the parties to consider resolving this case. ECF No. 31. But they were unable to reach resolution. This matter is now ripe for adjudication.

## II. Relevant Medical History

A complete recitation of the facts can be found in the medical records, the Petition, declarations and affidavits, and in the parties' respective briefings. In summary, Ms. Gnanasundaram was 28 years old when she received the HPV vaccine in her left deltoid from Michael Guthrie, R.M.A., on February 11, 2022. Exhibit ("Ex.") 1 at 7. Ms. Gnanasundaram had no history of left shoulder dysfunction prior to vaccination. *See* Ex. 4; Ex. 5 at 1-61.

In her affidavit, Ms. Gnanasundaram described the following:

> I was seated at the clinic bed. I remember a male nurse came up to me standing and I felt immediately like something was wrong. It felt too high and it was burning. I had trouble driving after that, but I figured the shoulder pain would go away after a couple of days. However, days later, I could not even lift my arm or drive… I put ice on my shoulder. It didn't help.

2

Ex. 4 at 1.

On March 29, 2022 (46 days after vaccination), Ms. Gnanasundaram saw Meng Smith, D.O., for complaints of left arm pain. Ex. 1 at 9. Petitioner reported having "left arm pain for the last month since getting HPV vaccine on 02/11/22[,]" as well as noticing a "divot" where she received the vaccine. *Id*. Upon exam, Dr. Smith observed "localized tenderness [at location of HPV vaccine injection] and depression/divot of tissue (unknown if this is related to vaccine/chronicity)." *Id*. Dr. Smith recommended NSAIDs (naproxen and Voltaren gel). *Id*. Dr. Smith also recommended that Petitioner follow up with her primary care provider ("PCP") within one to two weeks. *Id*. at 9-10.

Ms. Gnanasundaram's next medical visit was on July 8, 2022, three months and eight days later, when she followed up with her PCP, Hanna Mackie, D.O., regarding her left arm pain. Ex. 1 at 13. Petitioner reported that her "pain [was] intermittent but persists with current interventions." *Id*. Upon exam, Petitioner had "arm pain and localized tenderness at location of vaccine injection from 2/11[,]" as well as a "notable divot on exam with some deltoid weakness." *Id*. Decreased mobility was also noted upon exam. *Id*. at 14. Dr. Mackie recommended further imaging to look for possible nerve involvement and muscle atrophy, and she ordered an x-ray and an MRI. *Id*. at 13-14. Petitioner was instructed to follow up afterwards to review her MRI results. *Id*. at 13.

Ms. Gnanasundaram's July 28, 2022 x-ray of her left humerus yielded normal results. Ex. 1 at 23. She underwent an MRI of her left shoulder on August 24, 2022, which noted: "1. Normal rotator cuff. 2. Minimal signal involves the AC joint which may serve as a pain generator. 3. Minimal irregularity involves the posterosuperior labrum…" *Id*. at 24.

Nearly four months later, on December 8, 2022, Ms. Gnanasundaram followed up with her PCP regarding her left arm pain. Ex. 1 at 19. Petitioner reported that her pain fluctuated, but had "slightly improved" with stretching and the NSAIDs. *Id*. She also reported that "any movement above 90 degrees of abduction of her left shoulder [was] difficult for her without pain. She would like to get back to lifting in the gym if possible because she enjoys this but previously was giving her pain." *Id*. Upon exam, her PCP noted that Petitioner's left ROM was "intact with slight pain with Abduction [sic] only back ~140 degrees," and that Petitioner had "localized tenderness over a small divot in her left lateral deltoid but no AC joint tenderness and no GH joint tenderness." *Id*. at 22. The PCP noted that "the divot in her skin is probably from fat atrophy and [an] injection site reaction[,]" and also said Petitioner's pain and exam was not consistent with her MRI findings and thus, "probably not significant." *Id*. at 19. Ms. Gnanasundaram was told to return gradually to normal activity and weightlifting, continue NSAIDs and her home stretches, and to follow up if her symptoms did not improve. *Id*. at 19-20.

In her sworn affidavit, Ms. Gnanasundaram stated that because she was on Medicaid, her treatment options were limited. Ex. 4 at 2. She noted that in the year after vaccination, her pain level was at a 4, but if she used her shoulder for lifting or if she had slept on her left shoulder, her pain level would go up to a 7. *Id*. She stated that as a result of her shoulder injury, lifting weights is no longer a part of her life. *Id*.

### III.    Legal Standards

For compensation to be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

4

time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

> (ii) Pain occurs within the specified time frame;

> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### IV.    Ruling on Entitlement

#### a.  Severity Objection

Under the Vaccine Act, a petition for compensation must contain "supporting documentation, demonstrating that the person who suffered [a vaccine related injury] ...

5

suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine." 42 U.S.C. § 300aa–11(c)(1)(D)(i). The burden is on the petitioner to establish, by a preponderance of the evidence, the persistence of a vaccine-caused injury for longer than six months. *Song v. Sec'y of Health & Human Servs.,* 31 Fed. Cl. 61, 65–66, *aff'd*, 41 F.3d 1520 (Fed.Cir.1994). A petitioner cannot establish the length or ongoing nature of an injury merely through her self-assertion. Rather, the petition must be supported by medical records or by the opinion of a competent physician. *See* 42 § 300aa-13(a)(1). Petitioner bears the burden of proving a prima facie case by a preponderance of the evidence. *See* 42 U.S.C. § 300aa-13(a)(1)(A); *see also Moberly v. Sec'y of Health & Human Services*, 592 F.3d 1315, 1321 (Fed. Cir. 2010).

Respondent has argued that Petitioner did not establish that she suffered from a SIRVA for more than six months following the February 11, 2022 vaccination, because Petitioner's treatment course has several gaps "that are not well explained." Opp. at 4. Respondent identifies the 46-day delay from vaccination to Petitioner's first appointment for her shoulder, and then two subsequent three-month gaps in treatment during her treatment course. *Id*. Respondent also repeated his argument that Petitioner complained of arm pain versus shoulder pain, and thus her shoulder issues did not persist for the requisite six-month period. Lastly, Respondent noted that there is some "speculation" regarding whether Petitioner's shoulder issue was caused by the vaccination as opposed to Petitioner's weightlifting regimen. *Id*.

As I explained during the May 11, 2026 hearing, however I do not find any of these gaps to be significant. Delay in treating SIRVAs is common, and while the subsequent gaps may speak to what pain and suffering award is appropriate, they do not undermine a finding of six months of post-onset residual effects.

*b. SIRVA Objections – Onset and Reduced Range of Motion*

Respondent next contends that Petitioner cannot prove two elements of a SIRVA: that the onset of her shoulder pain occurred within 48-hours of vaccination, or that Petitioner's medical records do not preponderantly demonstrate a reduced range of motion as required by the SIRVA QAI. *Id*. A review of the record does not support Respondent's objections.

First, Respondent argues that Petitioner's shoulder pain did not occur within 48-hours of vaccination because when "Petitioner first sought medical care forty-six days after vaccination, she specifically denied shoulder pain …. She did not report *shoulder* pain until December 202, nearly ten months after vaccination." Opp. at 6. Rather, Respondent argued that Petitioner reported "arm" pain and denied having shoulder pain.

6

*Id*. However, as discussed during the hearing, this argument does not outweigh the totality of the evidence. The medical record from Petitioner's first visit for arm pain after vaccination notes that "L arm pain and localized tenderness at location of vaccine injection from 2/11(HPV vaccine)." Ex. 1 at 9. It appears that Petitioner and her medical provider were using the term "arm" and "shoulder" interchangeably. The specific reference to pain at the location of the vaccine injection, as well as Petitioner's complaint during that visit that the vaccine was placed too high on her shoulder, bolsters this finding. Thus, references to left arm pain as opposed to shoulder pain are not persuasive enough to dissuade me that Petitioner did not have shoulder pain within 48 hours of vaccination.

Second, regarding QAI three, Respondent argues that Petitioner's pain and reduced range of motion was not limited to her right shoulder because "[a]t all three of her appointments, petitioner showed no objective ROM deficits upon examination." Opp. at 7. Although Respondent has a more valid objection on this issue, I still find that the evidence preponderates in Petitioner's favor. The QAI only requires a minimum of *one* instance of a reduced range of motion to satisfy the requirement. And while there are notations that Petitioner's range of motion may have been "intact," there is no indication whether this was with active or passive range of motion. Thus, there is enough evidence of ROM restrictions to find in Petitioner's favor. And like the treatment gaps, this issue goes more to the severity of Petitioner's injury for purposes of calculating damages. Thus, the record as it stands preponderates in favor of the determination that Petitioner suffered a reduced range of motion in her right shoulder.

### c. Other Requirements

Even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), *i.e.*, receipt of a covered vaccine, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established or undisputed. Thus, based upon all of the above, Petitioner has met the elements for a SIRVA and is entitled to compensation.

8

## Conclusion

Based on my consideration of the complete record as a whole and for the reasons discussed in my ruling, **I find that Petitioner is entitled to compensation. A separate damages order will be issued.**

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master